F. E. HARTSFIELD, Appellant, v. WILLIE WILLIAMS and
MARY WILLIAMS, *et vir,* Appellees.

200 So. 220
Division A
Opinion Filed January 28, 1941
Rehearing Denied February 20, 1941

*Manley P. Caldwell* and *Madison F. Pacetti;* for Appellants;

*Newman T. Miller* and *Wareing T. Miller,* for Appellees.

BUFORD, J.—Appellees filed suit to cancel a mortgage. The mortgage was originally executed to secure the payment of notes aggregating $4,300.00.

The record shows that one Hartsfield advanced to the plaintiffs $5,298.00 for the construction of a house on plaintiffs' property. Plaintiffs executed to Hartsfield a warranty deed to secure the payment of the advances made to pay for the house. Plaintiffs were ignorant negroes; Hartsfield was an experienced and successful business man. The original transaction occurred sometime between the 1st and 26th day of January, 1926. Plaintiffs began making payments on the moneys advanced on January 26, 1926, and continued to make payments until July 18, 1927. At that time Hartsfield represented to plaintiffs that the balance due on the amounts advanced was $4,300.00. The record shows that plaintiffs reposed absolute confidence in Hartsfield.

Hartsfield then negotiated with his son to advance to a corporation, Hartsfield Investment Company, which corpora-

tion appears to have been conducted as a business convenience by B. D. Hartsfield and which he alleged was the creditor of the plaintiffs, the sum of $4,300.00 and to take the notes and mortgage of the plaintiffs to secure the payment of that sum. The son, F. E. Hartsfield, had no dealings whatever with the plaintiffs Willie Williams and Mary Williams. The whole transaction was carried on, and ever thereafter conducted, through B. D. Hartsfield.

Even after the notes and mortgage were executed B. D. Hartsfield continued to handle the transaction and to receive payments on the notes and mortgage and plaintiffs had no contacts with F. E. Hartsfield.

The record shows that when the representation was made to the plaintiffs that the balance due was $4,300.00 in truth and in fact the balance due was less than $2,500.00. The debtors, as stated, were ignorant and the mathematical operations of addition and subtraction were beyond their knowledge.

The suit was against F. E. Hartsfield and B. D. Hartsfield. F. E. Hartsfield filed answer and cross bill praying foreclosure for balance alleged to be due; B. D. Hartsfield filed an answer. After the execution of the notes and mortgage the plaintiffs paid thereon to B. D. Hartsfield the sum of $5,823.30. The total amount shown to have been paid on the indebtedness of $5,298.00 was $9,029.30.

The chancellor found that the debt secured by the mortgage had been fully paid and discharged and ordered cancellation.

Appellants contend here that the chancellor was in error because all parties were bound by the terms of the notes and mortgage and that the plaintiffs were precluded to offer parol evidence to show that the amount due on the debt at the time the notes and mortgage were executed was less than

the aggregate amount of the notes, which aggregate amount of the notes was secured by the mortgage.

There is but one logical conclusion to be drawn from the record and that is that the plaintiffs were misled and deceived by B. D. Hartsfield as to the amount of the balance due on the indebtedness and that they made and executed the notes and mortgage under a misapprehension of the truth and did so relying implicitly upon the representation made by B. D. Hartsfield and that B. D. Hartsfield handled the original transaction on behalf of himself or his corporation, Hartsfield Investment Company, and acted as agent for his son and Hartsfield Investment Company in procuring the sum of $4,300.00 which was secured by the notes and mortgage above mentioned. He prepared the notes and mortgage and procured the execution thereof.

The procuring of the notes and mortgage was a legal fraud on the complainants and B. D. Hartsfield thereby procured for the benefit of himself and Hartsfield Investment Company from F. E. Hartsfield a sum of money to which B. D. Hartsfield and Hartsfield Investment Company were not entitled to have and hold. The result necessarily is that Hartsfield Investment Company and B. D. Hartsfield hold the excess so procured in trust for F. E. Hartsfield. Because of the legal fraud in the procurement of the notes and mortgage, the court of chancery will go behind the execution of such notes and mortgage and determine the real amount of the debt at the time of the execution of such instruments.

When B. D. Hartsfield pretended to the debtors that after subtracting the aggregate amount which they had paid on the original debt there was left a balance due of $4,300.00 and caused them to execute notes and mortgage to his son, for whom he says he was then acting, and which is undisputed,

he thereby procured for his son what in the exercise of generous charity may be termed an unconscionable usurious contract, though the contract did not fall within the legal concept of the usury statutes.

The record shows that the notes and mortgage were executed by the debtor because of the fraudulent misrepresentation of B. D. Hartsfield as to the balance due on the original debt. So we have here a case of mistake on the part of the debtor caused by a fraudulent misrepresentation on the part of creditor. In such case equity will relieve and parol evidence is available to prove the true existing status. See 10 R. C. L., pages 1056-1059, Sections 251-252, and cases there cited. In Pomeroy's Equity Jurisprudence, 3rd Ed., Vol. 4, Sec. 1377, the author says:

"The jurisdiction of equity to grant the remedy of cancellation exists and will always be exercised when it is necessary to protect or maintain equitable primary estates, interests or rights; where, however, the estate, interest or right is legal, the jurisdiction always *exists* but its *exercise* depends upon the adequacy of the legal remedies,—a party being left to his affirmative or defensive remedy at law, where full and complete justice can thereby be done. The occasions giving rise to the exercise of this jurisdiction are mistake, fraud and other instances where enforcing instruments or agreements would be inequitable or unjust. A doubt was formerly entertained as to whether a court of equity ought to exercise its jurisdiction to order instruments absolutely void at law, and not merely voidable, to be delivered up and cancelled, since the legal remedy of a party was adequate and complete and no case was presented for equitable interference; but it is now well settled that jurisdiction will be exercised in such cases, except where the invalidity of the instrument is apparent on its face. The

particular instances in which this remedy is most often given are instruments concerning land, and negotiable paper before maturity, the legal remedies in these cases being as a general rule, inadequate. The remedy is also frequently given in case of bonds, policies of insurance, settlements and compromises, awards and judgments."

The same author in Pomeroy's Equity Jurisprudence (Equity Remedies), Vol. 6, Sec. 676, says:

"It is generally laid down that reformation will not be awarded on account of a mere unilateral mistake,—a mistake of but one party—standing alone. The reason is that in such a case there is no meeting of minds—no contract. A court of equity has no power to alter or reform an agreement, since that would in reality be making a contract for the parties. It is only the instrument evidencing the agreement that can be reformed.

"A unilateral mistake may be a ground for recission, and sometimes cancellation will be decreed. In a few cases where the facts seemed to warrant it, courts have made a decree for cancellation conditional upon a refusal of the defendant to consent to reformation. This, however, is an instance of the flexibility of the equitable jurisdiction rather than an extension of the remedy of reformation. Where, however, the instrument does not express the true intent of the parties, owing to mistake on one side coupled with fraud or inequitable conduct on the other, relief will be freely given. The ground of the jurisdiction in this case is the fraud of the defendant, rather than the mere mistake of the plaintiff."

We concur with what appears to have been the view of the chancellor, that all parties relied upon B. D. Hartsfield and that his status as between the parties was such, and his conduct in the transaction was such as to vitiate the notes and mortgage and that the notes and mortgage, therefore,

can not be held to bind the plaintiffs for a greater amount than was actually due on the debt at the time the notes and mortgage were executed.

The record shows that the debt had been fully paid and discharged and a considerable amount of money paid by the plaintiffs in excess of the amount necessary to discharge the debt. The plaintiffs have not sought to recover the excess but have merely prayed for cancellation which was granted by the final decree of the chancellor.

Appellant further contends that the plaintiffs are barred by laches. It is true that the matter ran over a long period of time but the record shows that as soon as the plaintiffs learned that they had over-paid the debt they promptly filed suit to cancel the mortgage and notes. What might constitute laches on the part of one person under certain conditions may not constitute laches as to an ignorant and uninformed person who has acted without knowledge and information as to his legal status and rights.

The Master, *inter alia,* found:

"The record of the testimony shows that the defendant B. D. Hartsfield handled all of the business done in connection with this deal. He agreed to build the house, advise the giving of the mortgage, guaranteed the payment of the plumbing bill and accepted the deed from the plaintiffs to himself for the property. The plaintiffs knew no one in these various transactions save the defendant B. D. Hartsfield. The record is clear that this defendant was the adviser of the plaintiffs at all times and was the agent for all of the interested parties in the transaction at all times.

"The mortgage which the plaintiffs seek to cancel and which F. E. Hartsfield seeks to foreclose was given on July 18, 1927, about 18 months after the plaintiffs had conveyed to the defendant B. D. Hartsfield the lot in question and

716

the said Hartsfield had agreed to build a house on the lot for $5,000. According to the record of the testimony and the exhibits in evidence, no arrangements were ever made as to the time and amount of payments to be made, but payments were made continuously from time to time by the plaintiffs to the defendant B. D. Hartsfield. There is filed in evidence a small book referred to as 'the little black book,' and five receipts showing the total amount of money paid on this house. No one disputes the fact that the plaintiffs have paid in a total of more than $9,000. Neither the book nor the receipts indicate what part of this was interest and what part of this was principal. No attempt was made to prove that the contract provided that defendant B. D. Hartsfield or any third person, firm or corporation was to pay State, county or city taxes, or insurance, or commissions, or any other charges. If the total of over $9,000 represents anything but principal and interest there is no proof, and I find it does not."

The chancellor, by his decree and by order denying exceptions to the master's report, approved this finding.

We find no reversible error in the record. The decree is affirmed.

TERRELL, C. J., THOMAS and ADAMS, J. J., concur.