GERALD, LYNN, Associate Judge.
Appellants, Defendants in an action to cancel a mortgage imposing a lien upon the home and furnishings and an adjacent “duplex” owned by Appellee, appeal a decree cancelling the mortgage as to the home and furnishings but leaving it intact as to the duplex. Appellants Arenson, husband and wife, are assignees for value of the mortgage from Appellant Marucci, who was represented in mortgage transactions by his agent, Appellant Baccus. We affirm.
The Chancellor issued a Final Decree containing findings on conflicting evidence which in part are as follows :
“The Bill of Complaint in this cause prays that a mortgage ‘be cancelled and decreed null and void’ as to a part of the real estate therein described. *238 Plaintiff, a negro woman, with little or no business experience, became involved in the transaction out of which the mortgage arose, when she was prevailed upon by two white men to purchase a lot upon which was a ‘duplex’. One of the men was an attorney at law, practicing in Miami, and the other a real estate broker in Palm Beach County. They purported to represent the owner of the ‘duplex’, one Marucci. The attorney also was an agent of United Mortgage Company of Miami, which later negotiated the sale of the mortgage to the Defendant
“The attorney prepared and submitted to Plaintiff for signature, a contract of purchase, and, later, a mortgage. Plaintiff says the papers were in blank when she signed them. In addition to the real estate upon which is located the ‘duplex’, the contract and mortgage likewise encumber three adjoining lots upon which is located Plaintiff’s home place. The mortgage also includes ‘all furniture, furnishings, fixtures and equipment contained therein’. The home place was in no-wised involved in the sale, and no indebtedness whatever was incurred or existed at any time regarding the home place or the furnishings. The sole indebtedness existing between the parties was for the purchase of the ‘duplex’. Plaintiff now insists that she did not agree to encumber her home place and was not aware that it was involved in the transaction until after the papers were signed and had passed to Defendant.
“Plaintiff did not have the benefit of counsel in the transaction, but relied entirely on the honesty and integrity of the men with whom she was dealing. Of course, they were aware of that fact.
“The mortgage is a ‘first mortgage’ on both the ‘duplex’ and home place. It secures the payment of $7900.00, the exact amount of the purchase price of the ‘duplex’. It bears interest at the rate of ten per cent per annum and is of the ‘balloon’ type. After paying $80.00 per month for a period of five years, the mortgage requires Plaintiff to thereupon pay the remaining balance in full.
s¡: sfs
“The mortgage is dated March 27, 1962. On April 10, 1962, through the efforts of United Mortgage Company, the mortgage was sold to Defendant for $7200.00. It was assigned to him ‘without recourse’. It is, of course, a matter of common knowledge that well secured first mortgages in this locality usually bear no more than six per cent interest. The one in question, an amply secured first mortgage, maturing in five years, with a clause accelerating maturity upon sale or mortgage of the premises, bore ten per cent interest. Nevertheless, they sold it almost immediately ‘without recourse’ for a discount of $700.00. Such a discount would yield an investor more than twice the usual rate of interest paid on mortgage investments in this locality. After paying to the Defendant $80.00 per month for a period of five years under the»terms of this mortgage, or a total of $4800.00, Plaintiff must then pay the further sum of $6806.31, or only $393.69 less than Defendant paid for the mortgage in the first place, or suffer the loss of her home and all its furnishings, concerning which she had in the beginning incurred no obligation whatever.
“Thus it appears that these men, armed with professional training and a superior knowledge of customs and usages in such affairs, worked this gullible and confiding woman for an unfair contract which a person aware of current business practices would not have signed. This was constructive fraud. 3 Pomeroy’s Eq.Juris. (5th Ed.) Sec. 922 et seq. The haste at which *239 they unloaded a well secured first mortgage, bearing ten per cent interest, at a discount of $700.00, to an ‘innocent holder’, and ‘without recourse’, leaves the firm impression of guilty knowledge on their part of infirmity in the mortgage, and is strong corroboration of Plaintiff’s stand in this case. The proposition that relief will be granted in such a case by a Court of Equity is well established. 3 Pomeroy’s Eq.Juris. (5th Ed.) Sec. 948a; Douglas v. Ogle, 80 Fla. 42, 85 So. 243; Hopkins v. Mills, 116 Fla. 550, 156 So. 532; Hartsfield v. Williams, 145 Fla. 709, 200 So. 220.
“As is to be expected, Defendant takes the position in this case that he is a ‘bona fide purchaser’ of the mortgage and not chargeable with any such defense. He testified that he had purchased many other mortgages. Undoubtedly, he has had much experience in this field. Before purchasing the mortgage in question, he visited the property and talked with Plaintiff. She says that when he inquired about the home place she told Defendant that the home place was not involved in the mortgage. On this point, as there is on other disputes in the case, there is conflict. It is the view of the Court that under all the circumstances here, there were sufficient facts brought to the attention of the Defendant to put him on notice of the infirmity in the mortgage insofar as the home place is concerned. Accordingly, Plaintiff is entitled to have the mortgage cancelled as an encumbrance upon the home place and furnishings. The mortgage will be recognized in all other details as a first lien upon the ‘duplex’.”
It may appear unnecessary to detail all of the foregoing. The points above quoted in the Final Decree cover issues upon which there was a direct and irreconcilable conflict of testimony. It could be possible that the author of this opinion might disagree with the veteran Chancellor; however, the Chancellor saw these witnesses, heard their testimony and strained them through the sieve of credibility and weight, and we must view the case through his eyes, absent an abuse of discretion.
“A chancellor’s decision is presumed to be correct and his resolution of an issue tried on controverted and conflicting evidence should not be rejected on appeal unless based on a misapplication of law or shown by the record to be clearly wrong, against manifest weight of evidence, or not supported by competent substantial evidence.” (Gaer v. Gaer, Fla.App. 1964, 168 So.2d 789.)
Affirmed.
SMITH, Acting C. J., and ANDREWS, J., concur.